[Crim. No. 1909. In Bank.—June 4, 1915.]

## THE PEOPLE, Respondent, v. EARL LOOMIS, Appellant.

CRIMINAL LAW—CONTINUANCE—PROCURING EVIDENCE OF INSANITY.— Where a continuance was asked by defendant to enable him to obtain evidence of his alleged insanity, but no showing was made of diligence in searching for it, or as to a substantial reason for failure to find it, and no statement was made that he could procure the evidence, but merely that he hoped to do so, the continuance was properly refused.

ID.—SUSPENDING PROCEEDINGS AND INSTITUTING INQUIRY AS TO SANITY. The statements in support of the motion for a continuance do not compel a doubt as to the sanity of defendant, and it was not an abuse of discretion by the trial court to proceed with the trial, without suspending the proceedings and instituting an inquiry into defendant's sanity under section 1368 of the Penal Code.

ID.—FINDING OF SANITY—CONFLICT OF EVIDENCE.—The rule that the finding of a jury on conflicting evidence is conclusive on this court, applies to a finding upon the question of sanity in a criminal case.

ID.—INSANITY—EVIDENCE.—Any witness who has observed the facts, is competent to testify that questions put by them to the defendant after the homicide were answered by him quickly and promptly.

Id.—Presumption of Sanity—Evidence.—The prosecution is not required to prove the sanity of defendant as part of its case in chief since sanity is presumed, and if insanity is urged as a defense in a criminal action defendant must prove it by a preponderance of evidence. The prosecution may offer evidence of insanity, including the testimony of physicians, in rebuttal, if defendant offers proof of insanity.

Id.—Instructions.—If the general instructions as to insanity are correct, and include the proposition that in determining sanity the jury may consider evidence that the ancestors of defendant were insane, it is not error to refuse to give an instruction, which is in itself unobjectionable, that if the jury believe that defendant's mother was insane, and that insanity is inheritable, they must take that fact into consideration in determining the sanity of defendant at the time of committing the crime for which he is being tried.

Id.—Reasonable Doubt.—An instruction that defendant should be acquitted if the evidence raises a reasonable doubt as to his sanity does not state the law of California, and it was properly refused.

Id.—Misconduct—Miscarriage of Justice.—It is improper to reverse a judgment of conviction upon the ground of misconduct assigned on the appeal, but not on the trial, based upon an improper question asked by the district attorney, objection to which was sustained, after which the court directed the jury to disregard it, unless the appellate court is convinced that it caused a miscarriage of justice under section 4½, article VI of the constitution.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Malcolm C. Glenn, Judge.

The facts are stated in the opinion of the court.

J. Fontaine Johnson, and Dal M. Lemmon, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SHAW. J.—The defendant appeals from a judgment of the superior court of Sacramento County imposing upon him a sentence of death, and also from an order denying him a new trial.

He was charged with the murder of Marie G. Hollcroft, alleged to have been committed on August 17, 1914. He pleaded not guilty, but was convicted of murder of the first degree, without mitigation of punishment. Sentence was

passed on November 17, 1914. The transcript on appeal was filed on January 4, 1915, but at defendant's request the hearing was postponed to the May, 1915, session at Sacramento.

The defendant's application for a postponement of the trial was properly denied. The continuance was asked to enable him to obtain evidence relating to the alleged insanity of the defendant. No facts were stated to show the exercise of any diligence in searching for evidence, nor was any substantial reason given for the failure to find it. The defendant did not state that he could procure evidence on the subject, but merely showed that he hoped to do so. Under these circumstances the court had no choice but to go on with the trial.

It is suggested that the showing made should have raised a doubt of the defendant's sanity at the time of the trial and should have caused the court to suspend the proceedings and call a jury to determine the present sanity of the defendant as provided in section 1368 of the Penal Code. This claim is untenable. The statements in the affidavit offered in support of the motion for a continuance were not of such a character as to compel such doubt. They can scarcely be considered as tending to suggest a doubt on the subject. The matter was one calling for the exercise of the discretion of the trial court. No abuse of discretion is shown and its decision must be upheld. (*People* v. *Hettick,* 126 Cal. 426, [58 Pac. 918] ; *People* v. *Geiger,* 116 Cal. 440, [48 Pac. 389] ; *People* v. *Kirby,* 15 Cal. App. 269, [114 Pac. 794].)

The claim that the defendant should have been acquitted on the ground that the preponderance of the evidence established his insanity at the time of the homicide cannot be sustained. There was some evidence tending to show insanity. But there was also ample evidence to show that the defendant was sane. The case is in no wise different from the numberless cases in which we have held that the finding of a jury on conflicting evidence is conclusive upon this court.

Witnesses who frequently talked with the defendant, after the homicide and before the murder, were allowed to testify that questions put to him by them were answered by him quickly and promptly. Objection was made that this was a matter for expert testimony and that they did not show special knowledge as experts. There was no error in this. Such facts may be stated in testifying by any witness who has observed them. They are mere matters of observation

and not of expert knowledge. (*People* v. *Manoogian,* 141 Cal. 595, [75 Pac. 177]; *People* v. *Lavelle,* 71 Cal. 352, [12 Pac. 226]; *Holland* v. *Zollner,* 102 Cal. 638, [36 Pac. 930, 37 Pac. 231]; *In re Wax,* 106 Cal. 350, [39 Pac. 624].)

The prosecution was not required to prove the defendant's sanity as a part of its case in chief. Sanity is presumed. If insanity is urged as a defense in a criminal case, it is for the defendant to prove it by a preponderance of the evidence. (*People* v. *Coffman,* 24 Cal. 236; *People* v. *Harris,* 169 Cal. 53, [145 Pac. 526].) If, in his defense, he offers evidence tending to show insanity, the prosecution, in rebuttal, may produce evidence of his sanity. The court did not err in allowing physicians to testify to his sanity in rebuttal of defendant's case.

The court gave full and correct instructions to the jury on the subject of insanity and the burden of proof thereof. Other instructions on the subject were asked by the defendant and refused by the court. So far as these latter were correct in law they differed from the instructions given only in the use of different words having the same meaning.

The defendant asked the following instruction:

"If the jury believe that the defendant's mother, in her lifetime, was insane, and that insanity is hereditary, they must take that fact into consideration in determining the question of defendant's insanity at the moment of shooting."

This is open to the criticism that it relates to a specific fact upon which the evidence was vague and unsatisfactory and that, therefore, it might tend to magnify its importance in the minds of the jury. (*People* v. *Keith,* 141 Cal. 690, [75 Pac. 304]; *People* v. *Patterson,* 124 Cal. 102, [56 Pac. 882]; *Thomas* v. *Gates,* 126 Cal. 4, [58 Pac. 315].) The general instructions given on the subject were correct and were sufficient to fully advise the jury thereon. They included the proposition that in determining sanity the jury might consider evidence that his ancestors were insane. Under these circumstances, even if the specified instruction was unobjectionable, it was not error to refuse it.

The proposition that the defendant is entitled to acquittal if the evidence raises a reasonable doubt of his sanity is not the law in this state. The court properly refused to instruct the jury to that effect. (*People* v. *Coffman,* 24 **Cal. 236**; *People* v. *Harris,* 169 Cal. 53, [145 Pac. 526].)

During the trial, the district attorney, on cross-examining a sister of defendant who had testified in his behalf, asked an obviously improper question.  Objection was made at once, the objection was sustained and the court directed the jury to disregard it.  This is now assigned as misconduct on the part of the district attorney, although not so assigned at the trial.  In the haste and zeal of a trial attorneys will sometimes ask improper questions.  Judgments cannot be reversed for an inadvertence of this character, unless upon an examination of the record, including the evidence, we reach the opinion that it caused a miscarriage of justice.  (Const., art. VI, sec. 4½.)  The record as a whole shows that the defendant had a fair trial and the evidence of his guilt is clear and convincing.  No miscarriage of justice appears.  We cannot perceive that this irregularity could have affected the verdict.  It must therefore be disregarded.

No other points are presented that deserve notice.  We find no prejudicial error.

The judgment and order are affirmed.

Sloss, J., Lorigan, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.